UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LONNIE KEENAN, | Case No.: 18cv129-MMA (LL) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| COX COMMUNICATIONS CALIFORNIA, LLC, et al., | |
| Defendants. | [Doc. No. 33] |

Plaintiff Lonnie Keenan ("Plaintiff") brings this action against his former employer Cox Communications California, LLC ("Cox") and his former supervisor Daniel Martinez ("Martinez") (collectively "Defendants"), alleging violations of California's Labor Code, breach of contract, and wrongful termination. *See* Doc. No. 12. Defendants move for summary judgment as to all claims. *See* Doc. No. 33. Plaintiff filed an opposition, to which Defendants replied. *See* Doc. Nos. 37, 38, 40, 43. The Court found the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 39. For the reasons set forth below, the Court **GRANTS** Defendants' motion.

This action arises out of events related to Plaintiff's relocation from Florida to California for purposes of employment as a Sales Account Executive ("SAE") at Cox in San Diego. Prior to his move to California, Plaintiff was employed as a sales representative by Comcast in Florida. In May 2015, Evan Park ("Park") contacted Plaintiff about a potential management position at Cox. Park had supervised Plaintiff for a period of years at Comcast prior to Park's own move out West to take a management position at Cox in San Diego. Plaintiff applied but was not selected for a management position.

Based on Plaintiff's continued interest, in August 2015, Park contacted Plaintiff regarding another management opportunity at Cox. On August 31, 2015, Plaintiff contacted Daniel Martinez, the Director for Enterprise Sales for Cox in San Diego, regarding the opportunity. Plaintiff interviewed with Martinez via conference call but was not selected for the position. Park then contacted Plaintiff regarding a possible position at Cox on Park's sales team. In September 2015, Plaintiff, Martinez, and Park discussed via conference call the possibility of Plaintiff accepting an SAE position at Cox. Plaintiff alleges that Martinez promised Plaintiff 20-25 "protected" accounts, to which only Plaintiff could sell. Martinez denies making any such statement or promise. Plaintiff claims that his understanding after speaking with Park and Martinez was that the promised accounts would ensure Plaintiff's ability to attain the necessary sales quota each month and generate substantial commissions.

According to Park, he made the decision to hire Plaintiff as an SAE with Martinez's support. On or about September 18, 2015, Martinez sent Plaintiff the offer letter and encouraged him to accept. The offer letter indicated that Plaintiff would earn a base salary of $90,000 annually and guaranteed commission payments for the first six

---

[1] These material facts are taken from parties' separate statements and responses thereto, as well as the supporting declarations and exhibits. Where a material fact is in dispute, it will be so noted. Particular disputed material facts that are not recited in this section may be discussed *infra*. Facts that are immaterial for purposes of resolving the current motion are not included in this recitation.

months of his employment (considered a "ramp-up" period). The offer letter further indicated Plaintiff's eligibility "to participate in a commission plan, to be reviewed with you at the start of your employment," with details and documentation to be provided by Plaintiff's "new leader." Def. Ex. 6. The offer letter also specified that Plaintiff's "employment with the Company will be 'at will'" and subject to termination "at any time, for any reason, with or without cause." *Id.* Plaintiff accepted the position and relocated to San Diego.

Plaintiff started his new job at Cox on or about October 12, 2015. Approximately two weeks after his first day at the company, Plaintiff received a written copy of Cox's 2015 Sales Compensation Plan. Plaintiff testified during his deposition that he recalls receiving and reading the document. The Compensation Plan set forth the terms and conditions of earning commissions on sales subsequent to Plaintiff's six-month "ramp up" period. This included a "decelerator" provision such that "commission calculations will be accelerated or decelerated based on the Performance Modifier matrix." Def. Ex. 9 at 73.[2] Plaintiff alleges that Martinez failed to inform him of the decelerator provision prior to Plaintiff accepting the offer of employment with Cox. Plaintiff also received and signed Cox's 2015 San Diego Rules of Engagement, which provided in pertinent part that the "Sales Director will be the final arbiter of ownership of accounts and customers." Def. Ex. 11 at 317.

Sometime around the start of Plaintiff's employment at Cox, Park provided Plaintiff with a list of the 20-25 "protected" accounts previously assigned to Cox employee, Adrian Callaghan. Park Depo. at 83.[3] Both Plaintiff and Park understood that these accounts would be assigned to Plaintiff going forward. In November 2015, Plaintiff discovered that other sales representatives had sold to certain accounts on the list despite their allegedly protected status. In early 2016, other sales representatives

---

[2] Citations to Defendants' documentary exhibits refer to the Bates numbering located at the bottom right-hand corner of each document.

[3] Citations to deposition transcripts refer to the pagination assigned by the document's creator.

continued to sell to the protected accounts.

After the ramp-up period ended in April 2016, Plaintiff failed to meet Cox's required 100% quota attainment for twelve consecutive months. In September 2016, Plaintiff was asked to review and sign Cox's Standards of Performance. The document outlined the company's expectations of its sales representatives and the performance review process for employees who failed to meet those expectations. In January 2017, consistent with Cox's Standards of Performance, Plaintiff was placed on a Performance Improvement Plan ("PIP"). Two additional SAEs on Park's team were also placed on PIPs. Park presented Plaintiff with a Documented Verbal Warning stating that through December 31, 2016, Plaintiff's six-month rolling quota average was only 36% and failure to improve would result in further corrective action.

In February 2017, Plaintiff received a Written Warning from Park stating that Plaintiff's six-month rolling quota average had decreased to 29%. Plaintiff received another Written Warning from Park in March 2017 stating that his six-month rolling quota average had increased to 31%. Cox management granted Plaintiff an "exception" under his PIP because Plaintiff appeared to be taking the necessary steps to increase his sales. Park Depo. at 178. The following month, Park presented Plaintiff with a Final Written Warning stating that Plaintiff's six-month rolling quota average had decreased to 27%. In May 2017, Cox management, including Martinez and Park, reviewed the performance of employees on PIPs and determined that Plaintiff's employment should be terminated. On May 18, 2017, Plaintiff received notice that his employment was being terminated effective immediately.

On December 15, 2017, Plaintiff commenced this action against Cox and Martinez. *See* Doc. No. 1-2. Plaintiff's First Amended Complaint is the operative pleading and sets forth a cause of action against both Cox and Martinez under California Labor Code section 970, which proscribes misrepresenting a job to induce a person's relocation for employment. *See* Doc. No. 12. Plaintiff brings additional claims against Cox pursuant to California Labor Code section 2751, for failure to provide a signed written commission

agreement prior to his hire, and common law claims for breach of an implied-in-fact contract, breach of the covenant of good faith and fair dealing, and wrongful termination in violation of public policy. *See id*. Defendants move for summary judgment as to all claims. *See* Doc. No. 33.

## LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party does not bear the burden of proof at trial, he may discharge his burden of showing no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *Id.* at 324. The party opposing summary judgment cannot "rest upon the mere allegations or denials of [its] pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.), cert. denied, 555 U.S. 827 (2008) (internal quotation marks omitted).

"In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences

1  in the light most favorable to the nonmoving party." *Soremekun v. Thrifty Payless, Inc.*,

2  509 F.3d 978, 984 (9th Cir. 2007).

3  <center>**EVIDENTIARY OBJECTIONS**</center>

4  As an initial matter, the parties object to various items of evidence. The Court

5  considers each party's objections in turn.

6  ### *1. Plaintiff's Objections*

7  Plaintiff objects to paragraphs 4, 5, and 9 of the declaration submitted by Martinez

8  in support of Defendants' motion for summary judgment. Plaintiff also objects to

9  Defendants' Exhibit 4, a May 12, 2015 email from Park to Mark Salkeld, a Cox

10  employee, and Martinez, as well as Defendants' Exhibit 5, a June 11, 2015 email from

11  Plaintiff to Martinez. With respect to Martinez's declaration, Plaintiff asserts that

12  Martinez references evidence in the identified paragraphs not previously produced during

13  discovery, including the emails to which Plaintiff objects. Plaintiff argues that these

14  portions of Martinez's declaration and the emails should be excluded. Defendants

15  respond that Martinez's declaration properly elaborates upon subjects raised during his

16  deposition and neither the portions of his declaration nor the emails should be excluded.

17  Although not cited, the Court assumes that Plaintiff requests to exclude this

18  evidence pursuant to Federal Rule of Civil Procedure 37(c)(1), which provides in

19  pertinent part:

> If a party fails to provide information or identify a witness as Required by
> Rule 26(a) or (e), the party is not allowed to use that information or witness
> to supply evidence on a motion, at a hearing, or at a trial, unless the failure
> was substantially justified or is harmless.

24  Fed. R. Civ. P. 37(c)(1). Upon due consideration and review of Martinez's deposition

25  testimony, the Court **SUSTAINS** Plaintiff's objections to paragraph 4 of the Martinez

26  declaration and Defendants' Exhibit 4. The Court **OVERRULES** Plaintiff's objections

27  to paragraphs 5 and 9 of Martinez's declaration as well as the objection to Defendants'

28  Exhibit 5.

### 2. *Defendants' Objections*

Defendants object to Plaintiff's Exhibits 4-14, various emails composed by Plaintiff, Park, Martinez, and Lorraine Valencia, and Plaintiff's Exhibit 15, an excerpt from Cox's 2015 National Rules of Engagement. Defendants argue that the evidence is not properly authenticated and contains inadmissible hearsay. Defendants' hearsay objection is not well-taken. The emails are generally admissible as non-hearsay or pursuant to a hearsay exception. *See* Fed. R. Evid. 801(d)(2), 803. The excerpt is a business record. *See* Fed. R. Evid. 803(6). Furthermore, the evidence could be presented in an admissible form at trial and thus may be considered by the Court in the summary judgment context. *See Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003).

With respect to authentication, documents authenticated through personal knowledge must be "attached to an affidavit that meets the requirements of [Federal Rule of Civil Procedure 56(c)] and the affiant must be a person through whom the exhibits could be admitted into evidence." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002) (quotation omitted). Plaintiff authenticates the emails and the excerpt through the declaration of counsel that the items are true and correct copies of emails produced by Defendants during discovery. *See* Griffith Decl. ¶ 5. Defendants have not challenged the content of the emails or the accuracy of the email addresses of the senders. Accordingly, the Court finds the declaration of counsel sufficient to authenticate the emails for the present purpose. *See Orr*, 285 F.3d at 777 n.20 (citing *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n.12 (9th Cir. 1996) (documents produced by a party in discovery were deemed authentic when offered by the party-opponent)).

Moreover, Plaintiff's Exhibit 12 is identical to Defendants' Exhibit 14, and Plaintiff's Exhibit 15 is included in Defendants' Exhibit 12, which were both properly authenticated by the defense. *See* Woods Decl. ¶ 10 (citing Park Depo.). The Ninth Circuit has held that "when a document has been authenticated by a party, the requirement of authenticity is satisfied as to that document with regards to all parties."

*Orr*, 285 F.3d at 776.  As such, the Court **OVERRULES** Defendants' objections to Plaintiff's Exhibits 4-15.  Defendants also object to Plaintiff's Exhibit 16, a letter prepared by Kristin Spoon.  Plaintiff retained Ms. Spoon to opine on Plaintiff's economic losses in this case.  Because the Court does not rely upon this exhibit in ruling on Defendants' motion, the objection is moot.

### DISCUSSION

#### 1.  California Labor Code § 970

Plaintiff brings a cause of action against Cox and Martinez for violation of California Labor Code section 970, which provides in relevant part:

> No person, or agent or officer thereof, directly or indirectly, shall influence, persuade, or engage any person to change from one place to another in this State or from any place outside to any place within the State, or from any place within the State to any place outside, for the purpose of working in any branch of labor, through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning either: The kind, character, or existence of such work; [or] The length of time such work will last, or the compensation therefor . . .

Cal. Lab. Code § 970(a)-(b).  A violation of section 970 is punishable as a criminal misdemeanor.  *See id*. § 971.  In addition, Labor Code section 972 provides that "any person, or agent or officer thereof who violates any provision of section 970 is liable to the party aggrieved, in a civil action, for double damages resulting from such misrepresentations."  *Id*. § 972.

Defendants move for summary judgment as to Plaintiff's claim, arguing that the cause of action is time-barred and thus fails as a matter of law.  Defendants urge the application of a one-year statute of limitations, whereas Plaintiff argues that a three-year statute of limitations applies.  The parties also dispute the date upon which Plaintiff's cause of action accrued.  If the claim is not barred, Defendants argue that summary judgment is appropriate on the merits.  Plaintiff asserts that disputed factual issues regarding Martinez's alleged misrepresentations precludes judgment as a matter of law.

a) <u>Statute of Limitations</u>

California provides a one-year statute of limitations for "[a]n action upon a statute for a penalty or forfeiture," Cal. Civ. Proc. Code § 340(a), and a three-year statute of limitations for "[a]n action upon a liability created by statute, other than a penalty or forfeiture" or "[a]n action for relief on the ground of fraud or mistake." *Id.* § 338(a),(d). At issue are both the nature of the civil remedy section 972 provides, as well as the nature of the cause of action under section 970, which together determine the applicable statute of limitations. A survey of the relevant case law reveals that courts have failed to reach a consensus on either issue.

Plaintiff contends that the three-year limitations period applies, relying primarily on the district court's determination in *Berdux v. Project Time & Cost, Inc.*, that "section 970 is not a 'penalty' for the purposes of determining the relevant statute of limitations" and "therefore [it would] be most appropriate to apply California's three-year statute of limitations to Berdux's section 970 claim." 669 F. Supp. 2d 1094, 1105 (N.D. Cal. 2009). The *Berdux* court focused on the nature of the remedy provided by Labor Code section 972, found that it was not a penalty, and applied a three-year statute of limitations period pursuant to Civil Procedure Code section 338(a), which applies to any "action upon a liability created by statute, other than a penalty or forfeiture." *Id.* at 1104 (citing Cal. Civ. Proc. Code § 338(a)). In addition to relying upon the reasoning of *Berdux*, Plaintiff cites the three-year statute of limitations set forth in Civil Procedure Code section 338(d), which governs any "action for relief on the ground of fraud or mistake." Cal. Civ. Proc. Code § 338(d). In doing so, Plaintiff focuses on the nature of the cause of action. Plaintiff argues that his Labor Code claim sounds in fraud and it would be inconsistent to apply the shorter statute of limitations set forth in Civil Procedure Code section 340.

While it is not obligated to follow state appellate court opinions, the Court notes that California's courts of appeal generally regard section 970 claims as sounding in fraud. *See, e.g.*, *Fittante v. Palm Springs Motors, Inc.*, 105 Cal. App. 4th 708, 716 (2003)

(referring to section 970 claim as a rule "against fraud and abuse by unscrupulous employers"); *Finch v. Brenda Raceway Corp.*, 22 Cal. App. 4th 547, 554 (1994) (holding that a "violation of section 970 constitutes an intentional misrepresentation"). If a Labor Code section 970 claim sounds in fraud, then Plaintiff's argument regarding the applicability of the statute of limitations in Civil Procedure Code section 338(d) appears to gain purchase.

Defendants dispute the application of section 338(d) to Plaintiff's claim, focusing on the nature of the remedy provided by Labor Code section 972. Defendants argue that "the statutory scheme established in [Labor Code] Sections 970-972 exists specifically to provide for damages <u>over and above</u> traditional fraud damages in the form of a penalty of 'double damages' for certain specified misrepresentations." Doc. No. 38-1 at 5 (emphasis in original).[4] Defendants cite to *Fenity v. CBS/CTS, Inc.*, in which the district court expressly declined to adopt *Berdux*'s rationale and found that "Plaintiff's decision to sue under § 970 to obtain damages is an 'action upon a statute for a penalty,' and confined to a one year statute of limitations." No. CV 18-1415 SJO, 2018 WL 6164765, at *5 (C.D. Cal. Apr. 16, 2018) (quoting Cal. Civ. Proc. Code § 340(a)). Defendants also rely on the Ninth Circuit's statement in *Aguilera v. Pirelli Armstrong Tire Corp.*, cited by the court in *Fenity*, that "statutory claim[s] . . . stemming from § 970 are governed by the one year statute of limitations found in California Code of Civil Procedure § 340." 223 F.3d 1010, 1018 (9th Cir. 2000); *Fenity*, 2018 WL 6164765, at *4 (citing *Aguilera*).

Plaintiff acknowledges *Aguilera* but notes that the application of the one-year statute of limitations to claims under Labor Code section 970 was not a disputed issue in that case. The circuit court "assume[d]" that the district court below had properly applied Civil Procedure Code section 340, noting that "the one-year statute of limitations has not been challenged in this appeal." *Aguilera*, 223 F.3d at 1018. The lack of analysis notwithstanding, *Aguilera* appears to be the only binding caselaw directly on point, and

---

[4] Unless otherwise indicated, *see supra*, citations to electronically-filed documents refer to the pagination assigned by the CM/ECF system.

the court clearly applied the one-year statute of limitations set forth in section 340.

Ultimately, the Court agrees with Defendants that the one-year statute of limitations set forth in Civil Procedure Code section 340(a) applies to Plaintiff's cause of action. Labor Code section 970 does not provide for, or create any substantive right to, civil damages. Labor Code section 972 provides the remedy for a section 970 violation and it does so in the form of a penalty. The California appellate courts have explained that "[g]enerally, section 340, subdivision (a) applies if a civil penalty is mandatory." *Shamsian v. Atl. Richfield Co.*, 107 Cal. App. 4th 967, 978 (2003) (internal citation omitted). The double damages provision set forth in Labor Code section 972 is indisputably mandatory. *See* Cal. Lab. Code § 972 ("any person . . . who violates any provision of section 970 *is liable* . . . for double damages.") (emphasis added); *see also Prudential Home Mortg. Co. v. Superior Court*, 66 Cal. App. 4th 1236, 1242 (1998) ("Case law has consistently applied the one-year limitations period to statutes that provide for recovery of actual damages and a mandatory additional penalty."). "In addition, 'the settled rule in California is that statutes which provide for recovery of damages additional to actual losses incurred, such as double or treble damages, are considered penal in nature [citations], and thus governed by the one-year period of limitations stated in section 340, subdivision [(a)].'" *Shamsian*, 107 Cal. App. 4th at 978 (quoting *G.H.I.I. v. MTS, Inc.*, 147 Cal. App. 3d 256, 277 (1983)).

With respect to the nature of the cause of action, even if Labor Code section 970 sounds in common law fraud, it is a separate statutory creation that applies to a specific type of misrepresentation that the California legislature determined to be particularly odious and therefore worthy of a specific penalty. *See Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 180 (2002) ("Labor Code section 970 also has a public purpose: to protect the community from the harm inflicted when a fraudulently induced employment ceases and the former employee is left in the community without roots or resources and becomes a charge on the community."). To give section 970 teeth, the California legislature promulgated section 972 and its double damages provision. This goes beyond

the actual damages available for a fraud claim and is necessarily punitive in nature. *See, e.g.*, *Hendrickson v. Ogden Aviation Food Servs.*, No. C-94-4463 MHP, 1996 U.S. Dist. LEXIS 2115, 1996 WL 40194, at *2 n.1 (N.D. Cal. Jan. 8, 1996) ("California Labor Code [§] 972, which contains the civil *penalties* for a violation of [§] 970, provides for double damages, precluding punitive damages.") (emphasis added); *George v. Kasaine*, No. CV 14-02863-AB (MRWx), 2015 U.S. Dist. LEXIS 188128, at *26 (C.D. Cal. May 5, 2015) (referring to double damages under California Labor Code § 972 as "a penal damage").

In sum, Plaintiff did not bring a common law fraud action against Defendants. Rather, he elected to pursue "an action upon a *statute* for a *penalty*." Cal. Civ. Proc. Code 340(a) (emphasis added). Recovery on Plaintiff's section 970 claim would constitute a penalty. Accordingly, a one-year statute of limitations applies.

b) Accrual of Plaintiff's Section 970 Claim

The date upon which Plaintiff's section 970 claim accrued determines whether the claim is barred by the one-year statute of limitations. *See* Cal. Civ. Proc. Code § 312 ("Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued . . . ."). Defendants argue that Plaintiff's claim accrued, at the latest, during the first quarter of 2016, by which time Plaintiff knew about the decelerator provision in the commission plan, knew the Callaghan accounts were being poached by his sales colleagues, and should have known that Martinez was not going to assign the protected accounts to him.

In response, Plaintiff cites to Civil Procedure Code section 338(d), which provides that a fraud "cause of action . . . is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." *Id* § 338(d). Plaintiff asserts that the date he discovered the facts constituting fraud are in dispute and must be determined by a jury. Plaintiff also proffers that the facts will demonstrate that Martinez "perpetuated his fraud by not refuting his misrepresentations about protected accounts," up until and including the date Cox terminated Plaintiff's employment. Doc. No. 37 at 1,

11. Thus, Plaintiff seems to suggest that because the misrepresentations continued throughout his tenure at Cox, his cause of action did not accrue until Cox terminated his employment.

"As a general rule, under California law the default accrual rule is the 'last element rule,' where a claim accrues 'when [it] is complete with all of its elements' – those elements being wrongdoing, harm, and causation." *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 880 (N.D. Cal. 2015) (quoting *Pooshs v. Philip Morris USA, Inc.*, 51 Cal. 4th 788, 797 (2011)). Consistent with this general common law rule, the Ninth Circuit has reasoned that a claim under Labor Code section 970 "is established when a misrepresentation is knowingly made with the intent to induce reliance, and justifiable reliance results, causing plaintiff damage.'" *Funk v. Sperry Corp.*, 842 F.2d 1129, 1133 (9th Cir. 1988) (citing *Glovatorium, Inc. v. NCR Corp.*, 684 F.2d 658, 660 (9th Cir. 1982)).

The general accrual rule is qualified under certain circumstances by the discovery rule. "Under California's discovery rule, a cause of action does not accrue, for purposes of the statute of limitations, until the plaintiff discovers, or has reason to discover, that he has been wrongfully injured." *Hendrix v. Novartis Pharm. Corp.*, 975 F. Supp. 2d 1100, 1106 (C.D. Cal. 2013) (citing *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110-11) (1988)). "[I]n order to employ the discovery rule to delay accrual of a cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808-09 (2005).

When intentional misrepresentations are an essential element, the discovery rule may delay the cause of action's accrual until "the plaintiff learned that the representation was false." *Brandon G. v. Gray*, 111 Cal. App. 4th 29, 35 (2003) (citing *Magpali v. Farmers Group, Inc.*, 48 Cal. App. 4th 471, 484 (1996)). Such was the case in *Aguilera*,

*supra.* The Ninth Circuit analyzed the accrual of the plaintiffs' Labor Code section 970 claim and held "the appellants' discharge date in September 1995 was the relevant accrual date for statute of limitations purposes." *Aguilera*, 223 F.3d at 1018. The nature of the alleged misrepresentation in *Aguilera* involved the permanency of the plaintiffs' employment and thus implicated Labor Code section 970's prohibition on inducing an individual to relocate based on a false statement regarding "'the length of time such work will last.'" *Id.* (quoting Cal. Lab. Code § 970). The plaintiffs did not learn of, nor have reason to suspect, the alleged falsity of the representation until the defendant terminated their employment approximately one year later due to declining earnings. As such, the plaintiffs' cause of action did not accrue until that time.

Here, any attempt to link the termination of Plaintiff's employment with the accrual of his section 970 cause of action fails. Plaintiff's claim does not arise out of a promise of permanent or long term employment. Nor could it based on Plaintiff's status as an "at will" employee. Instead, Plaintiff's claim rests on purported misrepresentations made by Martinez regarding the nature of Cox's commission plan (and the related failure to disclose the inclusion of a decelerator provision), and the assignment to Plaintiff of protected accounts (and Plaintiff's related ability to meet his sales quota each month and earn the commission-enhanced salary allegedly promised).

Plaintiff argues that when he "'discovered' or 'suspected' the fraud is a triable issue of material fact." Doc. No. 37 at 13. However, Plaintiff's own allegations, admissions, and undisputed facts belie this assertion. According to Plaintiff, it is undisputed that he "informed Martinez in person that his protected accounts were being sold into within the first two months of employment." Doc. No. 37-1 at 6 ¶ 25. And Plaintiff does not dispute that "[a]pproximately two weeks after his first day of work, Plaintiff received a copy of the commission plan and the 2015 Sales Compensation Plan Document." Doc. No. 43 at 18 ¶ 32. As such, it is undisputed that Plaintiff knew within the first several months of employment that the terms of the commission plan differed from his expectations, and Martinez was not following through on assigning Callaghan's

protected accounts to Plaintiff.

Plaintiff argues that "[i]t could take a reasonable employee months if not over a year of working to understand that Defendants never intended to provide the working conditions promised" to him. Doc. No. 37 at 13. Plaintiff misstates the appropriate standard. "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." *Jolly*, 44 Cal. 3d at 1111. In other words, the law does not wait for a plaintiff to be certain of the righteousness of his claim. The salient point was not when Plaintiff ascertained the falsity of Martinez's representations but rather when Plaintiff first suspected, or had reason to suspect, that the representations were untrue. At that point, Plaintiff had a choice – file suit for a violation of section 970, or "sit" on his statutory rights and let the situation continue to unfold. Plaintiff chose the latter.

Plaintiff further asserts that Martinez "perpetuated his fraud," and therefore Plaintiff believed up until Cox terminated his employment that he might still be assigned the protected accounts and able to attain the required monthly sales quota. Doc. No. 37 at 11. However, Plaintiff's "continuing course of conduct" theory "runs contrary to the fundamental rule that the statute [of limitations] begins to run from the time conduct becomes actionable." *Spellis v. Lawn*, 200 Cal. App. 3d 1075, 1080 (1988). The parties do not dispute that Plaintiff received and reviewed Cox's commission plan in October 2015 and learned at that time of the decelerator provision. Upon receipt and review of the commission plan, Plaintiff had reason to suspect that Martinez had misrepresented the plan to him prior to his acceptance of employment at Cox. The parties also do not dispute that as early as November 2015, Plaintiff discovered that other Cox employees had begun to poach the accounts previously assigned to Adrian Callaghan. The parties do not dispute that Park brought the issue to Martinez's attention shortly thereafter and

Martinez did nothing. Plaintiff then had reason to suspect that Martinez had misrepresented the assignment of the protected accounts to Plaintiff. "[E]very element of the cause of action was in place," as Plaintiff "had actual knowledge" that the commission plan and assignment of protected accounts were "otherwise than he had been informed." *Magpali*, 48 Cal. App. 4th at 484. No reasonable jury would find otherwise.

In sum, Plaintiff's section 970 claim accrued as early as October 2015 but no later than the first few months of 2016. Plaintiff did not file suit until December 2017. Accordingly, Plaintiff's section 970 claim is barred by the one-year statute of limitations applicable to actions "upon a statute for a penalty." Cal. Civ. Proc. Code 340(a).

### 2. *California Labor Code § 2751*

Plaintiff brings a second statutory cause of action against Cox for violation of California Labor Code section 2751, which provides in relevant part:

> Whenever an employer enters into a contract of employment with an employee for services to be rendered within this state and the contemplated method of payment of the employee involves commissions, the contract shall be in writing and shall set forth the method by which the commissions shall be computed and paid.

> The employer shall give a signed copy of the contract to every employee who is a party thereto and shall obtain a signed receipt for the contract from each employee.

Cal. Lab. Code § 2751(a)-(b). Plaintiff claims that "Cox did not furnish a[] [written commission] agreement pursuant to section 2751 at the outset of employment, or ever obtain signed receipt of such, as required, denying Keenan the opportunity to make informed employment decisions and ultimately leading to his termination." Doc. No. 12 ¶ 24.

Cox moves for summary judgment on this claim, arguing that the statute does not require an employer to provide a *prospective* employee with a written commission agreement, and there is no dispute that Cox in fact provided Plaintiff with a written

commission plan after he was hired. Cox also argues that it had a policy and practice of providing signed copies and retaining receipts, and Plaintiff is unable to prove that Cox failed to follow its established procedure in his case. Cox moves for summary judgment on the additional ground that the California Labor Code no longer provides a civil private right of action for violations of section 2751.[5]

Prior to 2012, a violation of section 2751 resulted in a penalty pursuant to section 2752, which provided for treble damages in a civil action. *See* Cal. Lab. Code, former § 2752, added by Stats. 1963, ch. 1088, § 2, p. 2549, repealed by Stats. 2011, ch. 556, § 3, No. 9 West's Cal. Legis. Service, p. 5179. In 2011, the California legislature repealed section 2752 of the Labor Code. *See id.* Courts have disagreed on the effect of the repeal. *Compare Belderol v. Glob. Tel\*Link*, No. CV 13-05440 SJO (MANx), 2013 U.S. Dist. LEXIS 203022, at \*13 (C.D. Cal. Oct. 15, 2013) ("a claim under Section 2751 can be brought even without Section 2752"), *with Beard v. IBM*, No. C 18-06783 WHA, 2019 U.S. Dist. LEXIS 60302, at \*15 (N.D. Cal. Apr. 7, 2019) (holding that subsequent to the repeal of section 2752 "the Labor Code no longer provides a private right of action for a violation of Section 2751.").

The Court need look no further than the Labor Code itself to resolve the issue. Because section 2751 does not contain its own civil penalty provision, and section 2752 has been repealed, a plaintiff may seek to recover the "default" penalties set forth in section 2699(f) in a representative capacity pursuant to the Private Attorneys General Act ("PAGA") of 2004, Cal. Lab. Code §§ 2698-2699.6. *See, e.g.*, *Piccarreto v. Presstek, LLC*, No. CV 16-1862 DMG (JCx), 2017 U.S. Dist. LEXIS 137255, at \*16 (C.D. Cal. Aug. 23, 2017) (awarding PAGA's default penalties based on violation of section 2751). As such, any monetary remedy for violation of section 2751 is available only in the form of penalties under PAGA. In this case, Plaintiff has not brought a PAGA claim against

---

[5] Although the Court is generally not inclined to consider new arguments raised for the first time in a party's reply brief, *see Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), it may do so "when the issue presented is purely one of law." *Bolker v. Commissioner*, 760 F.2d 1039, 1042 (9th Cir. 1985).

Cox.[6]  Summary judgment is therefore appropriate.

### 3. *Breach of Contract*

Plaintiff brings a breach of contract claim against Cox based on a purported implied-in-fact contract regarding the terms, conditions, and length of his employment. *See* Doc. No. 12 at 10 ¶¶ 33-35.  Cox moves for summary judgment, arguing that Plaintiff's claim fails as a matter of law based on the existence of an express at-will agreement between the parties.

"[T]he issue of the existence of an implied-in-fact contract . . . may appropriately be resolved as a matter of law given the undisputed facts of a particular case." *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1386-87 (1999).  In this case, it is undisputed that Plaintiff accepted a written offer of at-will employment which detailed his salary, signing bonus, initial commission payments, and eligibility to participate in a commission plan.  *See* Def. Exs. 6, 7.  It is similarly undisputed that Plaintiff acknowledged receiving Cox's written Sales Compensation Plan and Rules of Engagement shortly after beginning his term of employment.  *See* Def. Exs. 9, 11.  Together, these documents set forth the express terms and conditions of Plaintiff's employment.  "There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results." *Shapiro v. Wells Fargo Realty Advisors*, 152 Cal. App. 3d 467, 482 (1984).

Martinez's alleged misrepresentations are legally insufficient to create an implied-in-fact contract at odds with the express terms and conditions of Plaintiff's employment. "Employers frequently boast of good benefits, competitive salaries, excellent working conditions and the like.  To anoint such puffing language with contractual import would open the door to a plethora of specious litigation and constitute a severe and unwarranted intrusion on the ability of business enterprises to manage internal affairs." *Ladas v. Cal. State Auto. Ass'n*, 19 Cal. App. 4th 761, 772 (1993).  As such, Plaintiff "has failed to

---

[6] Moreover, any such claim would be barred by the applicable one-year statute of limitations. *See* Cal. Lab. Code § 340(a).

demonstrate there [i]s any triable issue of material fact to support his claim of an implied-in-fact contract." *Eisenberg*, 74 Cal. App. 4th at 1390.

Plaintiff's breach of contract claim fails as a matter of law, as does his claim that Cox breached an implied covenant of good faith and fair dealing arising out of any such contract. *See, e.g.*, *Gould v. Md. Sound Indus., Inc.*, 31 Cal. App. 4th 1137, 1152 (1995) ("Because Gould has failed to state a cause of action for breach of an implied-in-fact agreement not to terminate him except for good cause, it necessarily follows he cannot state a cause of action for breach of the implied covenant of good faith and fair dealing on the ground that he was terminated without good cause."). Accordingly, summary judgment in favor of Cox is appropriate as to both claims.

### *4. Wrongful Termination*

Finally, Plaintiff brings a tortious wrongful termination cause of action against Cox. California law recognizes a claim for wrongful termination in violation of a public policy reflected in a statute or constitutional provision. *See Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 172 (1980). Here, Plaintiff alleges that he was discharged in violation of the public policies expressed in California Labor Code sections 970 and 2751, as well as the policy against discrimination codified in California Government Code section 12940. Cox moves for summary judgment, arguing that Plaintiff's Labor Code claims fail as a matter of law and therefore do not establish the predicate public policy violations for a wrongful termination claim. Cox argues that Plaintiff's claim fails on the basis of the public policy set forth in Government Code section 12940 because it had a legitimate reason for terminating Plaintiff's employment, and Plaintiff cannot demonstrate that the reason was pretextual.

"An employer may not discharge an at will employee for a reason that violates fundamental public policy." *Stevenson v. Sup. Ct. of Los Angeles Cty.*, 16 Cal. 4th 880, 887 (1997). In order to establish a prima facie case of wrongful termination in violation of public policy, a plaintiff must demonstrate: (1) the existence of an employer-employee relationship; (2) a sufficient violation of public policy; and (3) damages. *See Holmes v.*

*Gen. Dynamics Corp.*, 17 Cal. App. 4th 1418, 1426 n.8 (1993).

Labor Code section 970 states a fundamental public policy. *See Finch*, 22 Cal. App. 4th at 554. The Court assumes without deciding that Labor Code section 2751 also sets forth a fundamental public policy. However, Plaintiff does not claim that he was discharged by Cox in violation of the policies embodied by these statutes. Plaintiff argues that he was fraudulently induced to accept a position at Cox and move to California in violation of section 970. Thus, even if Plaintiff's claim was not barred by the applicable statute of limitations, it would not provide the necessary predicate for a wrongful termination claim. Likewise, even if Plaintiff's section 2751 claim did not fail as a matter of law, Plaintiff does not claim that Cox terminated his employment in violation of the policy against failing to provide an employee with a signed commission agreement.

Government Code section 12940 also states a fundamental public policy against discrimination in the workplace. Plaintiff alleges that Cox terminated his employment on the basis of age, sexual orientation, and/or ethnicity, in violation of public policy. At the summary judgment stage, courts analyze a plaintiff's discrimination claim using a modified version of the three-step burden-shifting test established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Accordingly, "the employer, as the moving party, has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory factors." *Hicks v. KNTV Television, Inc.*, 160 Cal. App. 4th 994, 1003 (2008).

Here, Cox has offered a legitimate nondiscriminatory reason for terminating Plaintiff's employment. It is undisputed that Plaintiff never met his required sales quota. Cox placed Plaintiff on a PIP, granted him extra leeway in the form of an "exception," and terminated his employment after he failed to achieve the necessary quota to avoid discharge. An employee's failure to meet performance standards and a company's loss of confidence in an employee constitute legitimate reasons for dismissal. *See Trop v. Sony*

*Pictures Entertainment Inc.*, 129 Cal. App. 4th 1133, 1149 (2005); *Arteaga v. Brink's, Inc.*, 163 Cal. App. 4th 327, 352 (2008). As such, the burden shifts to Plaintiff to "produce 'specific' and 'substantial' facts to create a triable issue of pretext." *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998).

"A plaintiff may raise a triable issue of pretext through comparative evidence that the employer treated . . . similarly situated employees more favorably than the plaintiff." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1113 (9th Cir. 2011). Here, Plaintiff proffers no such evidence. Plaintiff asserts that certain employees received more favorable treatment but does not demonstrate that those employees were similarly situated. For example, he complains that one employee of a different ethnicity had a lower sales quota. However, Evan Park testified that the employee in question was not similarly situated to Plaintiff. The employee worked on international accounts and had been given a lower quota on that basis. Plaintiff points to Park's testimony that Plaintiff was held to different sales metrics than other employees, and that Martinez treated Plaintiff "differently," as creating a genuine issue for trial. However, Park had nothing to say regarding discrimination against Plaintiff based on his age, sexual orientation, or ethnicity. And the record is otherwise devoid of any evidence to support such a claim.

In the absence of any evidence to demonstrate a triable issue of fact regarding discrimination on an impermissible basis, Plaintiff's claim of wrongful termination in violation of the public policy set forth in Government Code section 12940 fails as a matter of law. Accordingly, Cox is entitled to summary judgment in its favor.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motion for summary judgment as to all claims. The Court **DIRECTS** the Clerk of Court to enter judgment accordingly and close the case.

**IT IS SO ORDERED**.

DATE: 7/22/19

_____

HON. MICHAEL M. ANELLO
United States District Judge